UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MARY KAY KEUMURIAN, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 15-cv-10481-ADB |
| | * | |
| EQUIFAX INFORMATION SERVICES, | * | |
| LLC, | * | |
| | * | |
| Defendant. | * | |
| | * | |

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO ENFORCE
SETTLEMENT AND PLAINTIFF'S MOTION TO VACATE SETTLEMENT**

BURROUGHS, D.J.

For the reasons set forth below, the Court <u>DENIES</u> Plaintiff's motion to vacate the

settlement agreement [ECF No. 26] and <u>ALLOWS</u> Defendant's motion to enforce the settlement

agreement [ECF No. 27].

## I.    BACKGROUND

Plaintiff Mary Kay Keumurian ("Plaintiff") brought this action under the Fair Credit

Reporting Act, 15 U.S.C. § 1681, *et seq*., alleging that Defendant Equifax ("Defendant") falsely

reported a judgment on her credit report. [ECF No. 1 at 1]. Plaintiff's complaint states that

Target National Bank filed a collection action against her in 2009. <u>Id.</u> at 2. Shortly thereafter,

Plaintiff filed for bankruptcy, listing Target as one of her creditors. <u>Id.</u> Although Target's

collection action was automatically stayed due to Plaintiff's bankruptcy petition, the court in the

collection action nonetheless proceeded to enter judgment. <u>Id.</u> Plaintiff was unaware of the

judgment until she had a mortgage application denied more than four years later. <u>Id.</u> at 3. After

successfully petitioning to vacate the Target judgment, Plaintiff notified Defendant, who initially

refused to remove the Target judgment from Plaintiff's credit report. Id. After some back and forth, Defendant ultimately removed the judgment from Plaintiff's credit report. Id. at 3–4. Plaintiff nonetheless alleges that she suffered damage as a result of Defendant's initial refusal to remove the information from the report. Id. at 4.

On July 8, 2015, Plaintiff filed a notice of settlement in this action, reporting that the matter had been resolved and that "the parties are finalizing settlement," and requested a 30-day settlement order. [ECF No. 17]. In August and September 2015, the parties filed two joint motions to extend time to finalize the settlement, reporting that they were continuing to discuss the details of the settlement. [ECF Nos. 19, 21]. On September 30, 2015, Plaintiff's counsel, Josef Culik, moved to withdraw. [ECF No. 23].

On February 2, 2016, Plaintiff filed a motion to vacate the settlement agreement, and Defendant filed a motion to enforce. [ECF Nos. 26, 27]. Plaintiff claims she did not authorize her predecessor counsel, Mr. Culik, to settle the lawsuit on her behalf. [ECF No. 26]. Defendant argues that the parties entered into a binding settlement agreement, and requests that the agreement be enforced. [ECF No. 28 at 1]. The Court held an evidentiary hearing on October 18, 2016. Plaintiff testified at the hearing, and Defendant introduced a declaration and exhibits from Mr. Culik, including a series of emails.

## II.    FINDINGS OF FACT

Based on the evidence submitted by the parties, as well as Plaintiff's testimony at the evidentiary hearing, the Court makes the following findings of fact.

Plaintiff engaged Mr. Culik as counsel in 2014. On October 21, 2014, they signed a contingency retainer agreement. The retainer includes a clause titled "Possible Difference Between My Recovery and the Attorney's Fee," which states that the value of the client's

damages may be less than the value of the attorney's work, that "I understand that my recovery may be less than what the Attorney receives," and then authorizes the attorney to negotiate a reasonable fee. Plaintiff initialed this paragraph in addition to signing the retainer agreement.

On December 29, 2014, after Defendant had removed the Target judgment from Plaintiff's credit report, Mr. Culik sent an email to Plaintiff advising her that "it is possible that we could bring a case for statutory damages ($100 to $1,000), but it is not something that is likely to obtain the damages you are seeking." Plaintiff responded on January 31, 2015, stating that she wanted to proceed with the case.

Mr. Culik engaged in settlement negotiations with Defendant's counsel via email in May and June 2015. On May 13, 2015, Mr. Culik wrote in an email to Defendant's counsel that Plaintiff had authorized him to make a settlement offer of $12,290.40. Defendant responded on June 15, 2015 with a counteroffer of $2,000. On June 16, 2015, Mr. Culik wrote that Plaintiff had authorized him to make a counteroffer of $7,790.40. On June 18, 2015, Defendant responded with a counteroffer of $4,000. On June 21, 2015, Mr. Culik wrote to Defendant that Plaintiff had authorized him to make a counteroffer of a lump sum of $6,500. On June 22, Defendant made a counteroffer of $5,000. On June 23, Mr. Culik wrote that Plaintiff had authorized him to accept Defendant's offer of $5,000, and added, "I am glad we were able to resolve this." The same day, Defendant's counsel responded: "Glad we were able to settle."

Mr. Culik consistently communicated with Plaintiff to keep her informed about the negotiations and to obtain her approval regarding the various settlement offers. On May 8, 2015, Mr. Culik sent an email to Plaintiff stating that cases like hers "usually settle fairly quickly," and asking her to email back to "confirm that, if they accept, we can settle for the maximum $1,000 in statutory damages, plus attorney fees and costs?" On the same day, Plaintiff wrote back: "Yes,

I confirm that we can settle for the maximum $1,000 in statutory damages, plus attorney fees and costs."

On June 18, 2015, Mr. Culik sent an email to Plaintiff to inform her that Defendant "has made an offer that would pay the required $1,000 in statutory damages, plus the attorney's fees that have been incurred (about $3,000 to date). I would like to see if I can get them to come up a little, but would you kindly email me to confirm acceptance of these terms if we can't get them to come up more?" On June 20, 2015, Plaintiff responded: "Yes that is fine."

On June 23, 2015, Mr. Culik sent an email to Plaintiff stating that the case had settled. He reported that Defendant would "pay the max $1,000 statutory damages, plus the $400 in filing fees, as well as attorney fees. They will be sending me a draft settlement agreement, which I will review and send to you for execution. This usually takes a few weeks. They will also include a current credit report which they will want you to agree is accurate." On the same day, Plaintiff responded: "Excellent! Thank you so much for your help with this."

Defendant's counsel then sent Mr. Culik the proposed settlement agreement and an updated copy of Plaintiff's credit report on July 6, 2015. On July 7, 2015, Mr. Culik responded with changes to the agreement, which were incorporated by Defendant's counsel. The updated agreement was sent back to Mr. Culik that day.

After Mr. Culik reported to the Court on July 8, 2015 that the case had settled, Plaintiff did some additional research that caused her to believe she could obtain more in damages than the amount that Mr. Culik had negotiated. Plaintiff then became dissatisfied with the amount in the settlement agreement. Plaintiff did not sign the settlement agreement, and she has not received any of the proceeds of the agreement.

The Court credits Plaintiff's testimony that, when she received the full settlement agreement, she was not satisfied with certain terms. She was unhappy with the amount of damages, objected to the fact that her attorney would collect more in fees than what she obtained in damages, and she was dissatisfied with the confidentiality, non-disclosure, and non-disparagement clauses.[1]

The court does not credit Plaintiff's testimony that she "absolutely" did not authorize Mr. Culik to settle for $1,000 in damages, plus attorney's fees and costs.

## III.   DISCUSSION

In general, an attorney does not have the authority to settle a matter simply by virtue of representing a client. Kinan v. Cohen, 268 F.3d 27, 32 (1st Cir. 2001) (citing Malave v. Carney Hosp., 170 F.3d 217, 221 (1st Cir. 1999) and Michaud v. Michaud, 932 F.2d 77, 81 (1st Cir. 1991)). "Conversely, 'an attorney may make a binding compromise on behalf of [the] client if the client has authorized [the attorney] to do so.'" Id. (quoting Michaud, 932 F.2d at 80). When there is a dispute as to whether the client gave the attorney authority to settle, an evidentiary hearing is usually required. Id. at 32–33. After the hearing, the Court "can resolve any conflict in the testimony; it may, for example, disbelieve the client. But such a determination cannot be made without first giving the client a fair opportunity to have [his or her] say." Michaud, 932 F.2d at 81 (citing Garabedian v. Allstates Eng'g Co., 811 F.2d 802, 803–804 (3d Cir. 1987)). A settlement agreement entered into by an attorney is presumed to have been authorized by the attorney's client, but rebuttal of that presumption renders the settlement ineffective. Id. at 80. The issue of "whether there is an enforceable settlement is a question of federal, rather than state,

---

[1] The proposed text of the final agreement has not been submitted to the Court.

law" where "the underlying action is brought pursuant to a federal statute." <u>Quint v. A.E. Staley</u>

<u>Mfg. Co.</u>, 246 F.3d 11, 14 (1st Cir. 2001).

Having conducted an evidentiary hearing and considered the evidence, the Court now

finds that Plaintiff authorized her predecessor counsel, Mr. Culik, to settle this case. Plaintiff

engaged in an ongoing email exchange with Mr. Culik in which she stated multiple times that

she authorized him to settle for $1,000, plus attorney's fees and costs. She responded that it was

"fine" when Mr. Culik noted that his fees amounted to about $3,000 as of June 18, 2015. She

responded "Excellent!" and "Thank you" on June 23, 2015, when Mr. Culik explained the terms

of the settlement, including that Plaintiff would be asked to agree to the accuracy of a current

credit report. Based on those emails, in combination with the email exchanges between counsel

for Plaintiff and Defendant, it is apparent that the parties settled for a lump sum of $5,000, which

represents $1,000 in damages, $3,600 in attorney's fees, and $400 for the filing fee. Plaintiff was

also to verify the accuracy of a current credit report.

The only issue that gives the Court pause is the additional terms now objected to by

Plaintiff that were apparently not discussed during the course of the settlement negotiations.

Those terms were the confidentiality, non-disclosure, and non-disparagement terms included in

the settlement agreement prepared by Defendant. The Court is willing to believe that Plaintiff

was unaware of those terms. For two reasons, however, the Court rules that the settlement

agreement is nevertheless binding, and the abovementioned terms are part of the agreement.

First, a settlement agreement is binding as long as the parties have agreed on all *material*

terms. <u>See, e.g.</u>, <u>White v. Fessenden Sch.</u>, 358 F. App'x 208, 210 (1st Cir. 2009) (settlement

agreement not enforceable unless parties agreed on all material terms); <u>Quint</u>, 246 F.3d at 15

(oral settlement agreement enforceable where "material terms were agreed upon"); <u>see also</u>

Bandera v. City of Quincy, 344 F.3d 47, 52 n.2 (1st Cir. 2003) (where parties entered into informal settlement in anticipation of later signing more complete agreement, initial agreement "could in some instances not be intended as a binding contract, or might be too indefinite; but neither is necessarily or even ordinarily so"). The parties' actions "may show conclusively that they have intended to conclude a binding agreement, even though one or more terms are missing or are left to be agreed upon. In such cases courts endeavor, if possible, to attach a sufficiently definite meaning to the bargain." Restatement (Second) of Contracts § 33 (1981). The settlement negotiations in this case proceeded for several rounds of offers and counter-offers, and the process went on for months. During that time, the only issues discussed by the parties were the amount of damages, the attorney's fees, the filing fee, and, as mentioned in passing, the approval of a current credit report. Given that these were the only topics for negotiation, the Court concludes that these were the material terms; it would be too much of a stretch to reason that an issue that was never even mentioned was nonetheless material to the agreement.

Second, when Plaintiff authorized Mr. Culik to settle the matter, she authorized him to agree to the terms that they had specified, and also to any additional terms not material to the agreement. See N. Maine Transp., LLC v. OneBeacon Am. Ins. Co., 820 F. Supp. 2d 139, 145–46 (D. Me. 2011) (where client was notified of material terms of proposed settlement and agreed to those terms, client was bound to settlement; and rejecting client's contention that he believed he would have opportunity to review paperwork before settlement was final). If the delegation of authority to settle a case on specified terms did not come with some ancillary discretion to agree on non-material terms, a client could always seize on a disagreement over a non-material term as a convenient way to renege on a settlement agreement. Here, Mr. Culik reviewed the complete settlement agreement proposed by Defendant, and he approved it with some minor edits. He had

previously represented other clients in similar matters concerning the major credit bureaus, so he was familiar with what the final terms of the proposed agreement would be, and he had the authority to bind the client to those terms.[2]

Ultimately, the dispute is between Plaintiff and Mr. Culik. If she believes that Mr. Culik should have informed her that there could be confidentiality, non-disclosure, and non-disparagement terms involved in the settlement agreement, her remedy is a suit for malpractice.

## IV.    CONCLUSION

Accordingly, Plaintiff's motion to vacate the settlement agreement [ECF No. 26] is DENIED, and Defendant's motion to enforce the settlement agreement [ECF No. 27] is ALLOWED.

**SO ORDERED.**

October 27, 2016                                             /s/ Allison D. Burroughs
                                                             ALLISON D. BURROUGHS
                                                             U.S. DISTRICT JUDGE

---

[2] Even were the case governed by Massachusetts law, the outcome would be the same. In addition, regardless of whether the additional terms are material, the parties still had a contract to settle the case for $5,000.